IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-798

No. COA22-340

Filed 6 December 2022

Buncombe County, No. 10 CVD 4766

DR. TRAVIS PG BARHAM, Plaintiff,

v.

LYNNE M. BARHAM, Defendant.

Appeal by plaintiff from orders entered 2 August 2021 by Judge Ward D. Scott in Buncombe County District Court. Heard in the Court of Appeals 2 November 2022.

> *Connell & Gelb PLLC, by Michelle D. Connell; Mary E. Arrowood; and Fox Rothschild LLP, by Troy D. Shelton, for plaintiff-appellant.*
>
> *Emily Sutton Dezio, PA, by Emily Sutton Dezio, for defendant-appellee.*

ARROWOOD, Judge.

¶ 1        Dr. Travis PG Barham ("plaintiff") appeals from the trial court's orders of civil contempt for the failure to comply with his child support obligations, the grant of attorney's fees to Lynne M. Barham ("defendant"), and the imposition of Rule 11 sanctions. For the following reasons, we affirm the trial court's orders of contempt and attorney's fees and reverse the imposition of Rule 11 sanctions.

I.        Background

¶ 2        Plaintiff and defendant were married on 21 February 1976. They are the

parents of eight children, with their last child, Timothy, turning 18 on 30 August 2020 and graduating from high school in June 2021. Litigation between the parties began when plaintiff filed a complaint for child custody, child support, and equitable distribution on 10 September 2010. The parties were divorced by judgment of absolute divorce entered 6 June 2011.

¶ 3        Since 2011 there have been numerous court orders regarding child support, child custody, and alimony. On 27 February 2018, the parties signed a gatekeeper order stating "neither party shall file a motion for modification of custody or support without prior approval by the presiding judge."

¶ 4        After the parties' seventh child graduated from high school, plaintiff filed a motion to modify child support on 23 August 2019. This motion resulted in a consent order filed 10 January 2020 requiring plaintiff to pay $716.00 per month to commence on 1 February 2020 "pending further orders." This order also specified that it was a "final order resolv[ing] all matters [now] pending." Instead of the ordered amount, plaintiff began paying one cent per pay period on 17 January 2020.

¶ 5        On 26 February 2020, plaintiff filed a motion "to establish credit for over-payment of child support." Plaintiff's motion stated that he "ha[d] a credit for overpayment of child support . . . in the amount of $12,486.95" and "desire[d] his overpayment of child support be applied to his ongoing child support obligation effective February[] 2020 as he ha[d] already paid this child support in advance."

Plaintiff's motion rested on the contention that each year from 2013 to 2019 he mistakenly made 26 payments instead of the required 24, establishing a "credit" of $12,486.95.

¶ 6 Defendant filed a motion for contempt on 11 May 2020 due to plaintiff's failure to abide by the 10 January 2020 child support order. The trial court entered an order to appear and show cause on 22 May 2020. On 4 June 2020, defendant filed a motion for Rule 11 sanctions alleging that plaintiff was not acting in good faith and lacked a viable legal claim for his motion to establish credit. Plaintiff took a voluntary dismissal of his motion on 27 October 2020 in order to use this argument as a defense to defendant's motion for contempt. The foregoing matters were heard by the trial court, Judge Scott presiding, on the 4th, 5th, 24th, and 25th of February 2021.

¶ 7 After trial, the court found plaintiff was in willful contempt for nonpayment of child support. Judge Scott listed 29 factual findings to support his conclusion and found plaintiff owed defendant $9,307.72 due to missed payments ranging from February 2020-February 2021. The trial court made findings illustrating that it considered the statutory factors set forth in N.C. Gen. Stat. § 50-13.4(c), including "the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings and accustomed standard of living of the child and the parties, the childcare . . . contributions of each party and other facts of the particular case." Additionally, the trial court found:

14. At trial, [plaintiff] argued that he had "pre-paid" his child support obligation from February 2020 forward by paying 26 payments from 2013-2019. It is well-established law in North Carolina, that prospective child support vests the day it is due. Additionally, [plaintiff's] claim is contradicted by his testimony that his payment of 26 payments per year were the result of his unilateral mistake.

. . . .

16. [Plaintiff's] position ignores the . . . opportunities for him to correct his unilateral mistake noting the several child support orders entered on this subject since 2013. [Plaintiff] is asking the [c]ourt to apply payments he made in 2013, 2014, 2015, 2016, 2017, 2018 and 2019 to a future obligation in 2020.

. . . .

19. The [c]ourt finds to accept [plaintiff's] proposition would place [defendant] in an undue hardship and that Timothy is unable to presently benefit from overpayments [plaintiff] made in 2013, 2014, 2015, 2016, 2017, 2018 and 2019.

. . . .

23. [Plaintiff's] actions to reduce his payment to $0.01 per pay period during the pendency of this action shows a willful act to purposefully violate the January 10, 2020 [o]rder. [Plaintiff] made a willful, calculated and deliberate decision to alter his payroll records to pay a lesser amount than obligated by the January 10, 2020 [o]rder. This willfulness is compounded by the fact that he reduced his child support payments without first filing a motion with this [c]ourt, even though the January 10, 2020 [o]rder specifies that he would continue paying $716 per

month "pending further orders." The law has long prohibited parties from engaging in self-help remedies.

. . . .

25. The [c]ourt finds that [plaintiff] has had at all times the ability to pay the child support as ordered and currently has the present ability to pay and means to comply with the January 10, 2020 [o]rder.

¶ 8 The trial court also ordered plaintiff to pay reasonable attorney's fees provided by N.C. Gen. Stat. § 50-13.6. Based on the affidavit of attorney's fees filed with the trial court on 16 March 2021, plaintiff was ordered to pay $5,406.25.

¶ 9 Defendant's motion for Rule 11 sanctions filed in response to plaintiff's 26 February 2020 motion to establish credit for overpayment of child support was also granted. In pertinent part the trial court made the following findings of fact:

9. Beginning January 17, 2020, [plaintiff] began paying [defendant] one cent per pay period in child support, without first seeking any additional modification of child support from this [c]ourt. He has continued paying child support at this rate past February 1, 2020, and to the present.

. . . .

11. Defendant argued, and the [c]ourt agreed, that there was no allowable claim under existing North Carolina law to provide the relief [p]laintiff requested. [Plaintiff's m]otion for "[c]redit" for Over-Payment of Child Support filed on February 26, 2020 lacked a legal basis under existing North Carolina law for the relief requested. The [c]ourt held a conference with

counsel to review his independent research into whether North Carolina law recognized [plaintiff's] claim. After summarizing its findings, the [c]ourt allowed [p]laintiff the opportunity to brief the matter or to argue a good faith basis for a change in existing North Carolina law. During the June 2020 and September 2020 conference with counsel, [p]laintiff's counsel was asked to provide the basis of the legal claim for "credit" for over-payment. This [c]ourt set October 27, 2020, as the due date for a brief on this subject from [p]laintiff's counsel, and on that date . . . [p]laintiff took a voluntary dismissal of [his motion]. Instead, [p]laintiff opted [to] reserve his arguments as a defense to [defendant's] motion for contempt for non-payment of child support.

12. It is worth noting that before, during, and after the extensive trial, the [c]ourt asked counsel to provide caselaw on the issue of "credits" and how they are recognized in North Carolina law. The [c]ourt, in its own research found *Brinkley v. Brinkley*, [135 N.C. App. 608, 522 S.E.2d 90 (1999)]. Plaintiff's counsel represented the party arguing against "credit" in *Brinkley* before the Court of Appeals.

13. Because there was not a plausible legal theory on the face of the February 26, 2020 [m]otion . . . and because [p]laintiff abandoned his ability to present arguments for good faith change in the existing law, [d]efendant has met her burden of showing that it was a sanctionable pleading.

. . . .

15. [Defendant] is an interested party, acting in good faith.

Based on the Rule 11 sanctions, plaintiff was ordered to pay $1,818.75 in attorney's fees to defendant. The trial court also considered two other motions for sanctions filed by defendant on the 2nd and 26th of June 2020 which the court denied. Plaintiff timely filed notice of appeal on 31 August 2021.

## II.    Discussion

### A.    Contempt Order for Nonpayment of Child Support

¶ 10    "The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant judgment." *Bossian v. Bossian*, 2022-NCCOA-443, ¶ 16 (citation and internal quotation marks omitted).

¶ 11    Pursuant to N.C. Gen. Stat. § 5A-21(a) (2021), to hold a party in civil contempt the trial court must find: (1) the order remains in force; (2) the purpose of the order may still be served by compliance; (3) the noncompliance was willful; and (4) the non-complying party is able to comply with the order or is able to take reasonable measures to comply.

¶ 12    It is the role of the trial court to make findings addressing each element in its contempt order. N.C. Gen. Stat. § 5A-23(e) (2021). As "civil contempt is based on a

willful violation of a lawful court order, a person does not act willfully if compliance is out of his or her power." *Bossian*, ¶ 25 (citation omitted). Willfulness is defined as: "(1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so." *Id.* Willfulness constitutes "more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Forte v. Forte*, 65 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983).

¶ 13 Here, plaintiff argues he cannot be held in contempt for nonpayment of child support as he never violated a court order, nor did he attempt to deliberately avoid his child support obligations. Instead, plaintiff asserts he "was ahead on his support payments" because he paid beyond the court ordered amount the previous years. Plaintiff contends it is this fact which precludes a finding of willfulness as his prospective payment obligations were never "past due." According to plaintiff's analysis, instead of seeking a refund of his overpayments, he was entitled to disregard the operative child support order entered 10 January 2020 as "there was a positive balance on [his] account," indicating that each future child support payment was deemed "paid" as soon as it vested. We disagree.

¶ 14 This Court addressed a similar concept of credits for prospective child support obligations in *Brinkley v. Brinkley*, 135 N.C. App. 608, 522 S.E.2d 90 (1999). There, we acknowledged that "there are no hard and fast rules when dealing with the issue of child support credits." *Brinkley* at 612, 522 S.E.2d at 93 (citation and internal

quotation marks omitted). We noted "that the imposition of a credit is not an automatic right even when the trial court finds that one party has overpaid his child support obligation[,]" but it may be appropriate "when an injustice would exist if credit were not given." *Id.* (citations omitted). Thus, contrary to plaintiff's argument, he was not automatically entitled to a child support credit nor was he authorized to unilaterally stop paying child support. "[A] supporting parent possesses no authority to . . . modify the amount of the court ordered child support payment." *Bossian*, ¶ 30 (citation and brackets omitted). It is the duty of the supporting parent to "apply to the trial court for modification." *Id.* (citation omitted). Consequently, when plaintiff altered his payment deposit schedule to deposit $0.01 per pay period, he was deliberately defying a court order.

¶ 15        Plaintiff continues to contest the trial court's contempt order by arguing that a parent's "mistaken apprehension" that he could stop paying child support prohibits a finding of willfulness. To support this contention, plaintiff relies on *Morris v. Powell*, 269 N.C. App. 496, 840 S.E.2d 223 (2020). However, plaintiff fails to acknowledge the distinction between the supporting parent in that case, compared to the instant case. In *Morris v. Powell*, the trial court found the father did not willfully violate the court order when he ceased making child support payments because the minor child no longer lived with the mother. 269 N.C. App. 496, 501, 840 S.E.2d 223, 226-27. We affirmed the trial court's decision not to hold father in contempt as

contempt "requires willful noncompliance." *Id.* at 501, 840 S.E.2d at 227. The trial court in the instant case found plaintiff acted willfully in his disregard of the 10 January 2020 order and this finding is evidenced by the record. "We will not disturb on appeal findings of fact that are supported by any competent evidence." *Id.* at 501, 840 S.E.2d at 226.

¶ 16        The record shows that plaintiff mistakenly made additional child support payments from 2013-2019. Accordingly, the trial court considered this evidence in its order. The court stated that although defendant's bank account, which the child support payments were deposited, was admitted into evidence, "[t]hose balances do not represent a stockpile of extra child support . . . thus, they have no bearing on whether [plaintiff] should have paid the child support outlined in the January 10, 2020 [o]rder." In addition to considering whether plaintiff accumulated a "credit" toward child support, the trial court applied N.C. Gen. Stat. § 50-13.10(a) (2021) to support its conclusion of contempt. Under N.C. Gen. Stat. § 50-13.10(a)(1)-(2), if the supporting party is not disabled or incapacitated:

> Each past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason, in this State or any other state, except that a child support obligation may be modified as otherwise provided by law, and a vested past due payment is to that extent subject to divestment, *if, but only if, a written motion is filed, and due notice is given to all parties . . . before payment is due*[.]

N.C. Gen. Stat. § 50-13.10(a)(1)-(2) (emphasis added). The record indicates that "[plaintiff] did not file any motion before the payment was due to divest the child support payments . . . under the January 10, 2020 [o]rder." Instead of requesting modification prior to the payment vesting, plaintiff took it upon himself to reduce his child support payments. Plaintiff then filed a motion to establish credit toward child support, weeks after his first payment under the new order was due.

¶ 17 We find that the trial court properly found and concluded that plaintiff willfully violated the 10 January 2020 child support order requiring him to pay $716.00 per month for the support of Timothy. As illustrated above, the court's order contained competent evidence addressing plaintiff's noncompliance and ability to pay the allotted amount. The court's order included findings that plaintiff receives $60,000.00 in annual income from his work as a dentist, receives $2,487.00 per month in social security, and received $100,000.00 from the sale of his home in December 2020. Accordingly, we affirm the trial court's order of contempt.

### B. Attorney's Fees under N. C. Gen. Stat. § 50-13.6

¶ 18 Plaintiff is also appealing the trial court's award of attorney's fees pursuant to N.C. Gen. Stat. § 50-13.6 (2021). Specifically, plaintiff contends the fee order should be reversed as he did not "refuse to provide support" but "overpaid support." We disagree.

¶ 19    "The facts required by the statute must be alleged and proved to support an order for attorney's fees. Whether these statutory requirements have been met is a question of law, reviewable on appeal." *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 723-24 (1980) (citations omitted). The amount of attorney's fees awarded is reviewable only for an abuse of discretion. *Id.* at 472, 263 S.E.2d at 724. Our statute states, in pertinent part:

> In an action or proceeding for the custody or support, or both, of a minor child . . . the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment . . . the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding[.]

N.C. Gen. Stat. § 50-13.6.

¶ 20    Here, the trial court specifically stated in its order plaintiff was in civil contempt as he "willfully refused to provide adequate support for the youngest child, Timothy[,]" in direct violation of the 10 January 2020 "controlling order of child support." The trial court made factual findings addressing the statutory considerations of N.C. Gen. Stat. § 50-13: "[t]his is an action for the enforcement of a child support award"; "[defendant] has incurred reasonable attorneys' fees"; "[defendant] is an interested party acting in good faith"; "[defendant] . . . [is] a dependent spouse and [plaintiff] . . . a supporting spouse"; and "[defendant] has

insufficient means to defray the expense of the suit." The trial court further found that defendant's attorney's fees "are reasonable considering the time and effort expended in defending the motions" and "are consistent with the customary fee for like work in this relevant market." Accordingly, the trial court's award of attorney's fees met the statutory requirements, was not an abuse of discretion, and is hereby affirmed.

## C.    Rule 11 Sanctions

¶ 21      Lastly, plaintiff challenges the trial court's order of Rule 11 sanctions and the court's conclusion "that there was no allowable claim under existing North Carolina law" as to his motion to establish a child support credit. For the following reasons, we find the trial court misinterpreted the applicable law and we reverse its order imposing sanctions.

¶ 22      We review the trial court's decision to impose sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11(a) *de novo. Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989).

> [Under] *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions[.]

*Id.*

"[T]he central purpose of Rule 11 is to deter baseless filings and to streamline the administration and procedure of our courts." *In re Cranor*, 247 N.C. App. 565, 585, 786 S.E.2d 379, 391 (2016) (citations omitted). It was not instituted to abate "creative advocacy[.]" *Coventry Woods Neighborhood Ass'n Inc. v. City of Charlotte*, 213 N.C. App. 236, 243, 713 S.E.2d 162, 167 (2011). On the contrary, the Rule was designed "to prevent abuse of the legal system[.]" *Grover v. Norris*, 137 N.C. App. 487, 495, 529 S.E.2d 231, 235 (2000). Moreover, our case law makes clear that our General Assembly "never intend[ed] to constrain or discourage counsel from the appropriate, well-reasoned pursuit of a just result for their client." *Id.* Thus, "in determining compliance with Rule 11, courts should avoid hindsight and resolve all doubts in favor of the signer." *Coventry Woods*, 213 N.C. App. at 236, 786 S.E.2d at 167 (quoting *Johnson v. Harris*, 149 N.C. App. 928, 938, 563 S.E.2d 224, 230 (2002)).

"There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." *In re Will of Durham*, 206 N.C. App. 67, 71, 698 S.E.2d 112, 117 (2010) (citations omitted). Because the trial court based its Rule 11 order on a violation of the legal sufficiency prong, we do not address the factual sufficiency nor the improper purpose prongs. *See Ward v. Jett Properties, LLC*, 191 N.C. App. 605, 607, 663 S.E.2d 862, 864 (2008).

Here, it was error for the trial court to conclude that plaintiff's motion lacked "a plausible legal theory." This is an inaccurate depiction of North Carolina law. As previously stated, *Brinkley v. Brinkley*, 135 N.C. App. 608, 522 S.E.2d 90 (1999), does not stand for the contention that child support credits are never available. Furthermore, plaintiff provided the trial court with documentation evidencing his overpayments, and requesting a credit for money previously paid is not sanctionable behavior. The trial court's misinterpretation of *Brinkley* is error. While we have found that the defendant's actions in unilaterally reducing his payments because of the claimed credit was not permissible, neither *Brinkley* nor any other precedent precludes one from seeking a credit, thus the court's imposition of Rule 11 sanctions was improper. Therefore, the trial court's order imposing Rule 11 sanctions is reversed.

## III.   Conclusion

For the reasons stated herein, the trial court's orders finding plaintiff in contempt and ordering the payment of reasonable attorney's fees are affirmed and the order imposing Rule 11 sanctions is reversed.

AFFIRMED IN PART AND REVERSED IN PART.

Judges ZACHARY and GRIFFIN concur.